UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL DAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | 18-10396-FDS |
| ) | |
| CHARLES GRACY and ) | |
| MARK GRACY, ) | |
| ) | |
| Defendants. ) | |

## ORDER ON DEFENDANTS' MOTION FOR PARTIAL DISMISSAL

SAYLOR, J.

This is an action for repayment of a loan. Jurisdiction is based on diversity of citizenship.

Plaintiff Michael Day loaned defendants Charles and Mark Gracy a total of $71,312.67 over the course of about a year to help them operate their community theater company. Despite the Gracys' many promises to the contrary, only $11,000 of that amount was ever repaid. Day has filed this action alleging fraud, breach of contract, money had and received, and violation of Mass. Gen. Laws ch. 93A, among other things. The Gracys have filed a motion for partial dismissal for failure to state a claim on which relief can be granted as to the violation of chapter 93A. For the following reasons, that motion will be denied.

## I. Background

### A. Factual Background

The following facts are set forth as alleged in the complaint.

Charles and Mark Gracy, who are married, owned and operated the Community Theater Company of Andover, Inc. ("ACT") from at least May 1, 2008, through the summer of 2016.

(Compl. ¶¶ 6, 7, 9, 49).  Charles Gracy was the President and Mark Gracy was the Director.  (*Id.* ¶ 7).  ACT was tax exempt under 26 U.S.C. § 501(c)(3) from at least 2013 until May 15, 2015.  (*Id.* ¶ 8).

In September 2013, Day told both Gracys that he would be willing to lend them money for ACT, but that it would need to be paid back before his children went to college.  (*Id.* ¶¶ 10-11).  Charles Gracy promised it would be repaid much sooner than that.  (*Id.* ¶ 11)  Accordingly, on September 16, 2013, Day loaned the Gracys and ACT $15,000 pursuant to a short loan agreement, which stated as follows:

> Today, September 16, 2013, Michael Day has loaned Charles Gracy and ACT Theater Company, individually and collectively, Fifteen Thousand Dollars.*
>
> Charles Gracy, individually and on behalf of ACT Theater Company, agrees to pay as much of the loan back as possible by November 30, 2013.  Any amount not paid back by said date will be paid back in whatever increments possible, as soon as possible, but in no event later than November 30, 2014.
>
> As long as best efforts are made by Charles Gracy to pay back the loan as noted above, no interest will be charged as long as the loan is paid back within twelve months of today.  Any amounts remaining outstanding as of that date will be charged interest at a simple rate of 1% per month from the initial date of the loan.
>
> . . . .
>
> * If any additional loans are made then they will follow these same terms.

(Compl. Ex. 2).  The agreement was signed by Day and Charles Gracy.  (*Id.*).

In December 2013, the Gracys represented to Day that ACT was having trouble fundraising because they could not show any funds in its accounts.  (*Id.* ¶ 22).  Mark Gracy stated that he was willing to take money out of his retirement account to repay Day if the business was unsuccessful.  (*Id.* ¶ 25).  Day loaned them and ACT an additional $50,000 on December 31, 2013, "for the sole purpose of being able to demonstrate the existence of a capital fund."  (*Id.* ¶¶ 23, 26).  It was deposited into an account named "ACT Capital Fund," on which

Charles Gracy was the sole authorized signatory. (*Id.* ¶ 28).

On April 15, 2014, the Gracys repaid Day $11,000 from the ACT Capital Fund account. (*Id.* ¶ 31).

Three days later, defendants tendered a check for another $15,000 to Day, also from the ACT Capital Fund, but it bounced on April 18 and again on April 24, 2018. (*Id.* ¶¶ 32-33). According to the complaint, Charles Gracy promised to look into it, but never did. (*Id.* ¶ 35).

During that time, Day had been assisting ACT with expenses for its operations, and he requested reimbursement in the amount of $1,436.67. (*Id.* ¶¶ 36, 38). The Gracys tendered a check in that amount, which also bounced. (*Id.* ¶ 38).

ACT had a show that was set to open on October 31, 2014. (*Id.* ¶ 40). On October 30, the Gracys told Day that their show could not open because ACT did not have insurance. (*Id.*). Day advanced $876 to pay the insurance. (*Id.* ¶ 42). The next day, the Gracys told Day they still could not open because ACT "lacked the funds to do so." (*Id.* ¶ 44). Day then loaned them another $4,000. (*Id.* ¶ 46).

As of November 30, 2014, $60,312.67 of the debt remained outstanding. (*Id.* ¶¶ 48, 52). ACT ceased operating in the summer of 2016, and the Gracys have since moved to Florida. (*Id.* ¶¶ 2-3, 50). Through the summer of 2016, the Gracys continued to promise Day that he would be repaid in full. (*Id.* ¶¶ 50-51).

On January 19, 2018, Day sent the Gracys a demand letter pursuant to Mass. Gen. Laws ch. 93A, § 9(3). (*Id.* ¶ 161).

    **B.**     **Procedural Background**

Day filed this action on February 28, 2018. The complaint contains eleven counts, against both Gracys unless otherwise specified: (1) fraud; (2) negligent misrepresentation; (3) breach of contract against Charles Gracy; (4) breach of oral contract against Mark Gracy;

(5) breach of the covenant of good faith and fair dealing; (6) money had and received; (7) promissory estoppel; (8) quantum meruit; (9) unjust enrichment; (10) breach of fiduciary duty against Charles Gracy; and (11) violation of Mass. Gen. Laws ch. 93A.  (Compl. ¶¶ 55-163).

Charles Gracy was served on May 4, 2018, and Mark Gracy eventually stipulated to service on June 1.  The Gracys have moved to dismiss the complaint as to count 11, violation of chapter 93A, for failure to state a claim upon which relief can be granted.

## II.   Standard of Review

On a motion to dismiss, the court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom."  *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  To survive a defendant's motion to dismiss, a plaintiff must state a claim that is plausible on its face.  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 556).  Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

## III.   Analysis

The Gracys contend that Count 11 must be dismissed because they were not engaged in

"trade or commerce" within the meaning of the statute and none of the allegations in the complaint are sufficient to reach the level of an "unfair or deceptive" act.

"Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Mass. Gen. Laws ch. 93A, § 2. The statute defines "trade" and "commerce" broadly, to

> include the advertising, the offering for sale, rent or lease, the sale, rent, lease or distribution of any services and any property, tangible or intangible, real, personal or mixed, any security as defined in subparagraph (k) of section four hundred and one of chapter one hundred and ten A and any contract of sale of a commodity for future delivery, and any other article, commodity, or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this commonwealth."

*Id.* § 1(b).

"[A]nalysis of the applicability of G.L. c. 93A, § 11, requires a dual inquiry whether there was a commercial transaction between a person engaged in trade or commerce and another person engaged in trade or commerce, such that they were acting in a 'business context.'" *Milliken & Co. v. Duro Textiles, LLC*, 451 Mass. 547, 563 (2008). Relief under chapter 93A "is not available to parties in a strictly private transaction." *Id.* (quoting *Linkage Corp. v. Trs. of Bos. Univ.*, 425 Mass. 1, 23 n.33 (1997). "An entity's status as a charitable corporation is not, in and of itself, dispositive of the issue whether c. 93A applies." *Linkage Corp.*, 425 Mass. at 23 (quoting *Planned Parenthood Fed'n of Am., Inc. v. Problem Pregnancy of Worcester, Inc.*, 398 Mass. 480, 492-93 (1986)) (internal quotation marks omitted). To determine whether the transaction occurred in a "business context," courts consider the "nature of the transaction," the "character of the parties involved," the "activities engaged in by the parties," "whether similar transactions have been undertaken in the past," and "whether the transaction is motivated by business or personal reasons." *Id.* at 24 (quoting *Begelfer v. Najarian*, 381 Mass. 177, 190-91 (1980)); *see Milliken*, 451 Mass. at 563-64. "A commercial transaction need not occur in the

5

ordinary course of a person's trade or business before liability under G.L. c. 93A will be imposed." *Milliken*, 451 Mass. at 564.  And the Supreme Judicial Court has "emphasize[d] the fact-specific nature of the inquiry." *Linkage Corp.*, 425 Mass. at 26.

The Gracys contend that the non-profit theater was not a business, and that "the mere borrowing of money by a non-profit corporation . . . does not constitute 'trade' or 'commerce' sufficient to establish a claim under Chapter 93A in this case." (Mot. to Dismiss at 4).  At this stage of the proceeding, however, the complaint has alleged sufficient facts to support a finding that the parties were engaged in commerce under the meaning of the statute.  It is clear that the money was loaned for the purpose of meeting ACT's operating expenses, not for the Gracys' personal expenses.  It was used for business purposes, such as insurance.  Although ACT was, at the time Day loaned the money, a tax-exempt, non-profit entity, it appears that it was attempting to "profit" from its arrangement with Day as a means of obtaining sufficient investment to put on a show.  *See Linkage Corp.*, 425 Mass. at 25 & n.35 (explaining that "[a]lthough by definition, a qualified nonprofit corporation does not earn a 'profit' from its activities, such a corporation need not be profitmaking in order to profit from an activity" and that the court's "use of the term 'profit' here is meant colloquially, in the sense of revenues that exceed expenses").  Although the analysis on a developed factual record could lead to a different result, the complaint plausibly alleges that chapter 93A applies to the loans here.

Next, the Gracys contend that this is a "garden-variety" breach-of-contract claim, and that none of their alleged conduct is "unfair" or "deceptive" under the meaning of the statute.  It is true that "the mere breach of a contract, without more, does not amount to a [Chapter] 93A violation." *Zurich Am. Ins. Co. v. Watts Regulator Co.*, 796 F. Supp. 2d 240, 244 (D. Mass. 2011) (alteration in original) (quoting *Madan v. Royal Indem. Co.*, 26 Mass. App. Ct. 756, 762

(1989)).  However, the complaint clearly alleges more than just a breach of contract.  Indeed, Count 1, which the Gracys do not seek to dismiss for failure to state a claim, is for fraud.  Fraud is the quintessential "deceptive" activity.  *See McEvoy Travel Bureau, Inc. v. Norton Co.*, 408 Mass. 704, 714 (1990).  Accordingly, the motion to dismiss will be denied.

## IV.    Conclusion

For the foregoing reasons, the motion to dismiss Count 11 for failure to state a claim on which relief can be granted is DENIED.

**So Ordered.**

/s/  F. Dennis Saylor  
F. Dennis Saylor, IV  
United States District Judge

Dated:  July 20, 2018